HILL HARDMAN OLDFIELD, L.L.C., et al., Appellees,

v.

GILBERT et al., Appellants.

[Cite as *Hill Hardman Oldfield, L.L.C. v. Gilbert,*
190 Ohio App.3d 743, 2010-Ohio-5733.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 25122.

Decided Nov. 24, 2010.

744

Edward L. Gilbert and Tracee D. Hilton–Rorar, for appellant.

James R. Silver, for appellees.

DICKINSON, Presiding Judge.

## INTRODUCTION

{¶ 1} Attorney Edward Gilbert represented James Hall in a racial-discrimination case, a black-mold case, and a dog-bite case. When Hall fell behind in some of his payments for costs in the racial-discrimination case, he, allegedly, told Gilbert that he would pay him from his award in the black-mold case. Hall later fired Gilbert in the black-mold case and hired John Hill, who negotiated a settlement of the case. When Gilbert claimed an interest in Hall's settlement award, Hill interpleaded part of the award in the common pleas court. Gilbert filed a cross-claim against Hall, alleging four causes of action. At trial, Gilbert presented his case first. Before he had finished, however, the trial court awarded Hall a "direct[ed] * * * verdict." Gilbert has appealed, arguing that the trial court had incorrectly failed to let him present his entire case, that it had incorrectly called Hill as its own witness, that the trial judge had incorrectly failed to recuse herself, that the trial court had committed plain error, and that the court's judgment was against the manifest weight of the evidence. We reverse because the trial court should have given Gilbert the opportunity to prove his breach-of-contract claim against Hall.

## BACKGROUND

{¶ 2} In 1997, Hall hired Gilbert to sue Consolidated Freightways for racial discrimination. A jury found in favor of Hall and awarded him $800,000. The trial court, however, reduced the verdict to $300,000. Gilbert appealed, and the appellate court reinstated the full award. Consolidated Freightways, meanwhile, had gone bankrupt. Because it had put up a supersedeas bond of only $450,000, the trial court awarded Hall that amount. Gilbert filed a second appeal, but the appellate court upheld the trial court's decision. The fee agreement that Hall and Gilbert had entered into regarding the racial-discrimination action did not cover appeals. Hall, however, agreed to make periodic payments to Gilbert for his work on the two appeals.

{¶ 3} In 2002, Hall hired Gilbert to file a black-mold case against his landlord. They did not sign a written fee agreement. In 2006, while the black-mold case was still pending, Hall hired Gilbert to file a dog-bite case against one of his neighbors. The fee agreement that they signed regarding the dog-bite case provided that Hall would pay Gilbert a contingency fee and his costs.

{¶ 4} According to Gilbert, in 2008, Hall told him that he could no longer afford to make payments for the appellate work that Gilbert had done in his discrimination case. They allegedly agreed that Gilbert could take the balance out of whatever Hall recovered in the black-mold case. Hall later fired Gilbert in the black-mold and dog-bite cases. In the dog-bite case, Hall eventually received a default judgment. Hall hired Hill to represent him in the black-mold case, and Hill negotiated a settlement with Hall's landlord.

{¶ 5} Gilbert learned about the settlement of the black-mold case and requested part of the proceeds from Hill. Gilbert told Hill that Hall still owed him approximately $6,700 for costs he incurred prosecuting the second appeal in the discrimination case and $6,000 for costs he incurred in the dog-bite case. After Hall told Hill that he did not owe Gilbert anything, Hill interpleaded $12,700 of the settlement amount.

{¶ 6} At trial, Gilbert made an opening statement and called several witnesses, including Hall. During his examination of Hall, the trial judge interrupted Gilbert and told him that it was going to call Hill out of order. After the court examined Hill and each side cross-examined him, the court "direct[ed] a verdict" for Hall. Eleven days later, it entered a judgment explaining its decision. Gilbert has assigned five errors on appeal.

## INVOLUNTARY DISMISSAL

{¶ 7} Gilbert's first assignment of error is that the trial court incorrectly stopped the proceedings before giving him the opportunity to complete his case-

in-chief. His second assignment of error is that the trial court incorrectly called Hill as its own witness. His fourth assignment of error is that the court incorrectly issued a directed verdict, and his fifth assignment of error is that the court's judgment was against the manifest weight of the evidence. Because these assignments of error are related, we will consider them together.

{¶ 8} Although the trial court labeled its decision a directed verdict, it was actually an involuntary dismissal under Civ.R. 41(B)(2). See *Kowalski v. Smith*, 9th Dist. No. 09CA0059, 2010-Ohio-3662, 2010 WL 3075630, at ¶ 9 ("[A] motion for directed verdict * * * in a bench trial[ ] will be deemed to be a motion for involuntary dismissal under Civ.R. 41(B)(2)"), quoting *Alh Props. P.L.L. v. Procare Auto. Serv. Solutions L.L.C.*, 9th Dist. No. 20991, 2002-Ohio-4246, 2002 WL 1906252, at ¶ 8. Under Civ.R. 41(B)(2), "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant * * * may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." The criteria for an involuntary dismissal under Civ.R. 41(B)(2) are different from a directed verdict under Rule 50(A). *Alh Props. P.L.L.*, 2002-Ohio-4246, 2002 WL 1906252, at ¶ 9. "A motion for directed verdict challenges the sufficiency of the evidence, and when ruling on such a motion, the trial court is required to view the evidence in the light most favorable to the nonmoving party." Id. "In contrast, when the trial court rules on a motion for involuntary dismissal under Civ.R. 41(B)(2), the court weighs the evidence, resolves any conflicts, and may render judgment in favor of the defendant if the plaintiff has shown no right to relief." Id.

{¶ 9} The trial court did not wait until Gilbert had completed presenting his evidence to dismiss his claims. Whether Gilbert is entitled to a new trial, however, depends on whether he could have proved any set of facts that would have entitled him to relief. If he could not have, any error in the trial court's sua sponte dismissal was harmless. See Civ.R. 61 (describing harmless error).

## SETTLEMENT FUNDS

{¶ 10} Although he was not able to present all his evidence, Gilbert had three possible theories of recovery. The first is that in light of his prior representation of Hall, he had a lien on the black-mold settlement award. The second is that Hall had assigned him a right to part of the settlement award. The third is that Hall's failure to pay him from the proceeds of the settlement breached their contract for legal services.

{¶ 11} Regarding the lien theory, "Ohio Courts have recognized the right of an attorney to attach a lien to a client's judgment despite the absence of any statute to that effect." *Telxon Corp. v. Smart Media of Delaware Inc.*, 9th

Dist. Nos. 22543 and 22673, 2005-Ohio-6223, 2005 WL 3117132, at ¶ 7; *Petty v. Kroger Food & Pharmacy*, 165 Ohio App.3d 16, 2005-Ohio-6641, 844 N.E.2d 869, at ¶ 11 ("A charging lien is a lien upon a judgment or other monies awarded to a client, or former client, for work previously performed by the attorney"). Actually, it is not a true lien. "The right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund." *Cohen v. Goldberger* (1923), 109 Ohio St. 22, 141 N.E. 656, syllabus.

{¶ 12} It was not possible for Gilbert to establish a charging lien against the black-mold settlement award, because he had incurred the costs he sought to recover while prosecuting other cases. *Petty*, 165 Ohio App.3d 16, 2005-Ohio-6641, 844 N.E.2d 869, at ¶ 12. "A strict reading of the *Cohen* requisites allows an attorney to be paid out of funds created by him for the work done in creating those funds. However, *Cohen* does not authorize the reimbursement of all monies owed to an attorney, whether related to the judgment or not." Id.

■ {¶ 13} Gilbert also could not recover based on assignment. It is not disputed that at the time Hall attempted to assign his right to the proceeds from the black-mold case to Gilbert, the black-mold case had not settled. The Ohio Supreme Court has held that "[a] person may not assign the right to the future proceeds of a settlement if the right to the proceeds does not exist at the time of the assignment." *W. Broad Chiropractic v. Am. Family Ins.*, 122 Ohio St.3d 497, 2009-Ohio-3506, 912 N.E.2d 1093, at ¶ 26.

## BREACH OF CONTRACT

■ {¶ 14} Gilbert's other theory of recovery is that Hall breached their oral contract. According to Gilbert, while he was working on Hall's black-mold case, Hall owed him for costs he had incurred in the discrimination case and for the costs he was in the process of incurring in the dog-bite case. Because Hall was unemployed and could not pay the discrimination and dog-bite-case costs, he agreed that Gilbert could take them from the black-mold case after it had concluded.

{¶ 15} Under Civ.R. 13(G), "[a] pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." The trial court dismissed Gilbert's cross-claims against Hall because it concluded that they "[did] not arise out of the same action or occurrence that is the subject matter of the original action." It did not consider, however, whether Gilbert's

breach-of-contract cross-claim "relat[ed] to any property that is the subject matter of the original action." Civ.R. 13(G). Gilbert's claim related to Hall's proceeds in the black-mold case, which was the same "property" that Hill interpleaded.

{¶ 16} Hall has argued that the trial court's determination that Gilbert's cross-claim was not properly before the court was correct under *Dean v. Harshaw/Filtrol Partnership* (1988), 55 Ohio App.3d 67, 562 N.E.2d 940. In that case, the Eighth District concluded that a lawyer could not intervene in another action by his former client "to protect his claim for unpaid professional fees." Id. at 68. The difference between that case and this one, however, is that it involved intervention under Civ.R. 24(A) and the lawyer did not assert a contractual right to the proceeds in the subsequent case.

{¶ 17} In *W. Broad Chiropractic*, 122 Ohio St.3d 497, 2009-Ohio-3506, 912 N.E.2d 1093, the Ohio Supreme Court explained the difference between assignment and breach-of-contract claims. In that case, Kristy Norregard was injured in an automobile collision. Three days later, she received treatment from West Broad Chiropractic. At the time of the treatment, Norregard signed a document purporting to assign her right to the proceeds of a settlement or judgment against the insurer of the person who caused the collision. Later, West Broad Chiropractic attempted to sue the tortfeasor's insurer under the assignment. The Supreme Court concluded that the "assignment" was ineffective because Norregard did not have a present right to settlement funds at the time she signed it. Id. at ¶ 26. The Supreme Court noted, however, that West Broad Chiropractic did have a contract with Norregard, which might be enforceable. Id. Similarly, although Gilbert does not have a claim for the interpleaded funds based on assignment, he may have a breach-of-contract claim against Hall for his share of the proceeds from the black-mold case. The trial court, therefore, incorrectly concluded that Gilbert's breach-of-contract claim was not a proper cross-claim under Civ.R. 13(G).

{¶ 18} The trial court also concluded that even if Gilbert's claims were properly before the court, he had failed to prove them. The court, however, did not let Gilbert present all his evidence on his breach-of-contract claim. Gilbert did not have the opportunity to ask Hall whether they had a contract regarding the proceeds of the black-mold case or to testify on his own behalf. Assuming without deciding, therefore, that a trial court can sua sponte dismiss a case under Civ.R. 41(B)(2), we conclude that the trial court incorrectly sua sponte dismissed Gilbert's case before he had had the opportunity to present all his evidence on his breach-of-contract claim. See *Sargeant v. Sampson* (Mar. 31, 1999), 9th Dist. No. 18947, 1999 WL 195019, at *6, quoting *Gibbons v. Price* (1986), 33 Ohio App.3d 4, 12, 514 N.E.2d 127 (Carr, J., concurring). Gilbert's first and fourth assignments

of error are sustained. His second and fifth assignments of error are moot and are overruled on that basis.

## RECUSAL

█ {¶ 19} Gilbert's third assignment of error is that the trial judge incorrectly failed to recuse herself. "This Court, however, is without authority to review a matter involving the disqualification of a judge." *State v. Roderick* (June 3, 1998), 9th Dist. No. 18521, 1998 WL 289698, at *3; see *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441–442, 8 O.O.3d 438, 377 N.E.2d 775. "The procedure for seeking disqualification of a judge is set forth in Section 2701.03 of the Ohio Revised Code." *Roderick*, 1998 WL 289698, at *3. Gilbert's third assignment of error is overruled.

## CONCLUSION

{¶ 20} The trial court incorrectly dismissed Gilbert's breach-of-contract claim under Civ.R. 41(B)(2). The judgment of the Summit County Common Pleas Court is reversed, and this cause is remanded for a new trial on Gilbert's breach-of-contract claim.

Judgment reversed
and cause remanded.

CARR and WHITMORE, JJ., concur.