[Cite as *Sutton v. Douglas*, 2014-Ohio-1337.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

RODD SUTTON

    Appellee

    v.

ROSEMARY A. DOUGLAS, et al.

    Appellants

C.A. No.     26958

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009 08 6421

DECISION AND JOURNAL ENTRY

Dated: March 31, 2014

HENSAL, Judge.

{¶1}　Rosemary and Charles Douglas appeal a judgment of the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}　In August 2006, Rodd Sutton sued his ex-wife, Victoria Sutton. Later that same month, Ms. Sutton conveyed a parcel of real property to her mother, Rosemary Douglas. After learning about the conveyance, Mr. Sutton amended his complaint to add a fraudulent conveyance claim against Ms. Sutton and Mrs. Douglas. Ten days after Mr. Sutton filed his amended complaint, Mrs. Douglas quitclaimed her interest in a different property to her husband, Charles Douglas. After a jury found in favor of Mr. Sutton on his claims against Ms. Sutton and his fraudulent conveyance claim against Ms. Sutton and Mrs. Douglas, Mr. Sutton filed a new action against the Douglases in which he alleged that the second conveyance was fraudulent. In

his complaint, he sought compensatory damages, punitive damages, prejudgment interest, and attorney fees.

{¶3} The Douglases filed their Answer on October 5, 2009. Two weeks later, Mr. Sutton served them with interrogatories and a request for production of documents. As of a pretrial conference on December 9, 2009, the Douglases had not responded to the discovery requests. Following the conference, the trial court issued a case management scheduling order, in which it ordered the Douglases to answer the discovery requests in full by January 11, 2010. The order told the Douglases that their "[f]ailure to answer the discovery requests * * * may result in the imposition of sanctions, including adverse judgment for failure to prosecute or defend."

{¶4} The Douglases did not respond to Mr. Sutton's discovery requests by the January 11 deadline, so, on February 9, 2010, Mr. Sutton moved for a default judgment under Civil Rule 37(B)(2)(c). Following two extensions of time, the Douglases responded to the motion. In their response, the Douglases admitted that they had not complied with the court's deadline, but explained that, because they now lived in Florida, it had been difficult for their lawyer to coordinate their responses to the requests. They also argued that a default judgment was too harsh of a sanction because they had not acted in bad faith. They further argued that Mr. Sutton had not made a reasonable effort to resolve the discovery issues under Civil Rule 37(E) and had not suffered any prejudice from the delay.

{¶5} On March 2, 2010, the trial court held a status conference. During the conference, the court received testimony regarding Mr. Sutton's motion for default judgment. Following the conference, the court issued an order granting the motion. According to the court, although the Douglases claimed to have finally answered the discovery requests, they did not provide a copy

of their responses. The court noted that the Douglases' lawyer testified that a majority of the responses were objections, but found that it was unreasonable that the Douglases did not make those objections by the initial deadline. Finding that the Douglases had notice that a default judgment could be entered against them if they did not respond to the discovery requests by the court's deadline, and explaining the domino-effect that the delay would have with all of the other deadlines that had been set in the case, the trial court granted Mr. Sutton's motion and scheduled a damages hearing.

{¶6} The trial court subsequently referred the issue of damages to a magistrate, who held a hearing. At the hearing, Mr. Sutton did not call any witnesses. He relied, instead, on the parties' stipulations and a number of exhibits. Following the hearing, the magistrate found that Mr. Sutton was entitled to $67,500 in damages from Mr. and Mrs. Douglas separately, as well as his attorney fees, but not punitive damages or prejudgment interest. Mr. Sutton objected to the magistrate's conclusions regarding punitive damages and prejudgment interest. Upon review, the court determined that the $67,500 in compensatory damages should be against the Douglases jointly and severally, that Mr. Sutton was entitled to prejudgment interest, that he was entitled to $135,000 in punitive damages from Mrs. Douglas only, and that he was entitled to his attorney fees from Mrs. Douglas. The Douglases have appealed, assigning five errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN GRANTING DEFAULT JUDGMENT AS A DISCOVERY VIOLATION WITHOUT PROVIDING PROPER NOTICE.

{¶7} The Douglases argue that the trial court violated their due process rights by entering a default judgment against them under Civil Rule 37(B)(2) without providing proper

notice. According to them, a trial court must give a noncompliant party a second chance to comply with an order before imposing a default judgment. They also argue that, even though the court's pretrial order contained language warning them that it could enter a default judgment against them if they did not comply with its discovery order, the notice was insufficient because it was merely boilerplate language.

{¶8} In *Ohio Furniture Co. v. Mindala*, 22 Ohio St.3d 99 (1986), the Ohio Supreme Court held that, before a trial court can dismiss an action for failure to comply with a discovery order, it must provide the plaintiff with notice under Civil Rule 41(B)(1). *Id*. at 101. In *Polin, U.S.A., Inc. v. Walsh*, 61 Ohio App.3d 637 (9th Dist.1989), however, this Court explained that, under the plain language of Civil Rule 41(B)(1), the rule does not apply to default judgments. *Id*. at 639. Later, in *Haddad v English*, 145 Ohio App.3d 598 (9th Dist.2001), this Court reasoned that, since a default judgment is a harsh remedy analogous to the granting of a dismissal, "the granting of a default judgment requires the due process guarantee of prior notice." *Id*. at 603, citing *Mindala* at 101.

{¶9} In this case, the Douglases received adequate notice about the possibility of a default judgment. Mr. Sutton served his discovery requests on October 19, 2009, and requested that they be answered within 28 days under Civil Rule 33(A)(3) and 34(B)(1). According to the trial court, because the Douglases did not meet the 28-day deadline, it orally warned them at the December 9 status conference about the possibility of sanctions if they did not comply. It also entered an order on December 11, 2009, directing them to comply with the discovery requests by January 11, 2010, or face the possibility of sanctions, "including adverse judgment for failure to * * * defend." Because the trial court explicitly warned the Douglases that it could enter a default judgment against them if they did not answer the discovery requests by a certain date,

and it provided that warning nearly three months before it proceeded to enter a default judgment against them, we conclude that the court did not violate the Douglases' due process rights.

{¶10} The Douglases argue that the language in the trial court's December 11 order was insufficient to provide adequate notice because it was "boilerplate" language. They also argue that they were entitled to a "second chance" to comply with the trial court's order. In support of their argument, they have cited *Esser v. Murphy*, 9th Dist. Summit No. 25945, 2012-Ohio-1168, and *Sazima v. Chalko*, 86 Ohio St.3d 151 (1999).

{¶11} In *Esser*, the trial court issued an order directing the parties to provide the court with an update about the status of the case by a certain date. The order warned Mr. Esser that, if he did not comply with the order, it could result in the dismissal of his case under Civil Rule 41(B)(1). When Mr. Esser missed the deadline, the court dismissed the action. On appeal, this Court concluded that the trial court erred when it dismissed the action sua sponte, explaining that, under Civil Rule 41(B)(1), Mr. Esser was entitled to notice of the court's intent to dismiss after he failed to comply with the court's order. *Id.* at ¶ 10. It determined that the boilerplate language in the initial order that Mr. Esser received before he missed the deadline was not sufficient to comply with Rule 41(B)(1). *Id.* at ¶ 12.

{¶12} In *Sazima*, the trial court dismissed Ms. Sazima's action after she did not comply with an order directing her to file a more definite statement. The Ohio Supreme Court held that, since the trial court had not warned Ms. Sazima that it would dismiss her case if she did not comply with the order, it did not provide sufficient notice under Civil Rule 41(B)(1). *Sazima* at 156. It also explained that, although the motion to dismiss that Mr. Chalko filed after she missed the deadline did provide adequate notice, because Ms. Sazima submitted a more definite statement after receiving his motion, the trial court could not grant it. *Id.* at 156-157. According

to the Supreme Court, if a court could dismiss an action for plaintiff's failure to comply with an outstanding order after notice to the plaintiff's counsel resulted in compliance, the entire purpose of providing notice in the first place would be defeated. *Id*. at 157.

{**¶13**} This case is distinguishable from *Esser* and *Sazima* because it involves the entry of a default judgment, not a dismissal under Rule 41(B)(1). In *Haddad*, this Court determined that, although due process required the court to notify the Haddads that it might enter a default judgment against them on Mr. English's counterclaim if they did not appear for their scheduled depositions, it did not require the court to provide them with an opportunity to cure their default before proceeding with its judgment. *Haddad*, 145 Ohio App.3d at 605. It was sufficient that the Haddads "had notice of the possible discovery violation sanction and failed to abide by the trial court's order * * *." *Id*. Unlike with Civil Rule 41(B)(1), there is no due process requirement that a court provide an additional round of notice to the defendants after a discovery violation occurs. Like in *Haddad*, the Douglases had notice that the court might enter a default judgment against them if they failed to respond to Mr. Sutton's discovery requests by the court-ordered deadline. Furthermore, we note that the Douglases have not cited any authority that supports their argument that the notice was inadequate simply because it was "boilerplate" language. *See Continental Tire, N. Am. v. Titan Tire*, 6th Dist. Williams No. WM-09-010, 2010-Ohio-1355, ¶ 52 (rejecting argument that prayer for relief for attorney fees was inferior because it was "boiler plate"). The Douglases' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING DEFAULT JUDGMENT FOR A DISCOVERY VIOLATION WHEN LESS SEVERE SANCTIONS WERE AVAILABLE.

{¶14} The Douglases next argue that the trial court abused its discretion when it imposed the most severe sanction for their violation of the discovery order. They argue that entry of a default judgment should be reserved for the most flagrant cases, and only if the faulting party acted in bad faith. They assert that the question is whether the trial court "examined the right things," including

> the history of the case; all the facts and circumstances surrounding the noncompliance, including the number of opportunities and the length of time within which the faulting party had to comply with the discovery or the order to comply; what efforts, if any, were made to comply; the ability or inability of the faulting party to comply; and such other factors as may be appropriate.

*Morgan Adhesives Co. Inc. v. Datchuk*, 9th Dist. Summit No. 19920, 2001 WL 7383, *3 (Jan 3. 2001), quoting *Russo v. Goodyear Tire Rubber Co.*, 36 Ohio App.3d 175, 178-179 (9th Dist.1987). According to the Douglases, since the trial date was still 18 weeks away, Mr. Sutton was in no danger of being prejudiced by the delay in resolving discovery issues. They also note that Mr. Sutton did not move to compel discovery before moving for a default judgment. They further note that the trial court did not explicitly find that they acted willfully or in bad faith.

{¶15} At the status conference on March 2, 2010, the court noted that the fact that the discovery requests were past due had been brought to the court's attention at the pretrial conference on December 9, 2009. The court noted that, in setting January 11, 2010, as the deadline for the Douglases' responses, it had taken into account the holiday season and the fact that the Douglases live in Florida. The court explained that that was a considerably longer extension than it normally would have allowed for discovery responses. The court found that, even though the Douglases live out of state, they could have used the telephone or email to communicate with their lawyer. The Court also found that the Douglases had received their own copy of the discovery requests and did not need their lawyer to convey the questions to them. It

further noted that the Douglases had not moved for an extension of time before the January 11 deadline, and that Mr. Sutton had waited until well past the deadline to move for default. It found that, because a substantial number of the Douglases' responses were merely objections, many of which the court could have resolved months earlier, the delay in responding to those questions had prejudiced Mr. Sutton. The court determined that the Douglases had exhibited blatant disregard for the court's order and it, therefore, granted judgment in favor of Mr. Sutton.

{¶16} Upon review of the record, we conclude that the trial court adequately considered all of the "right things" when it decided the appropriate sanction for the Douglases' discovery violation. *Datchuk* at *3. At the pretrial conference, the court acknowledged that a default judgment was "the strictest of sanctions," and explained that it "certainly would have looked to another resolution * * * had there been some information before this Court that would allow me to go otherwise." While the court did not use the words "bad faith," it did find that the Douglases acted with "blatant disregard" for the court's order. Accordingly, we cannot say that the court abused its discretion when it granted Mr. Sutton's motion for default judgment. *Id*. The Douglases' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY HEARING AND GRANTING A DISCOVERY SANCTIONS MOTION WHEN THE MOVING PARTY FAILED TO COMPLY WITH THE MANDATORY PROVISIONS OF CIV. RULE 37(E) BEFORE THE FILING OF THE MOTION.

{¶17} The Douglases next argue that the trial court was not permitted to grant Mr. Sutton's motion because he failed to comply with Civil Rule 37(E). That rule provides:

Before filing a motion authorized by this rule, the party shall make a reasonable effort to resolve the matter through discussion with the attorney, unrepresented party, or person from whom discovery is sought. The motion shall be accompanied by a statement reciting the efforts made to resolve the matter in accordance with this section.

Civ.R. 37(E). The Douglases argue that Mr. Sutton's motion for default did not contain any of the statements required by Rule 37(E) and that the record, including the hearing transcript, is devoid of any attempts by Mr. Sutton to resolve the discovery issue before filing his motion.

{¶18} In *Spragling v. Oriana House, Inc.*, 9th Dist. Summit No. 23501, 2007-Ohio-3245, this Court adopted the position that, since the purpose of Rule 37(E) is

> to endorse the self-regulating aspect of discovery and to require court intervention only as a last resort[,] * * * 'once a trial court has gone to the trouble of conducting a hearing on a motion and issuing a decision resolving the parties' dispute, * * * we see no useful purpose in invoking Civ.R. 37(E)—which is intended to benefit the trial court—to reverse its judgment and force the court to begin its work again * * *.'

*Id*. at ¶ 7, quoting *Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630, ¶ 11 (2d Dist.). It, therefore, was not reversible error for the trial court to consider the merits of Mr. Sutton's motion for default judgment even if he did not comply with Rule 37(E). *Id*. at ¶ 8. The Douglases' third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW AND COMMITTED REVERSIBLE ERROR IN GRANTING PUNITIVE DAMAGES WITHOUT A HEARING.

{¶19} The Douglases next argue that the trial court should have held an evidentiary hearing on the issue of punitive damages. They note that, after the court referred the issue of damages to a magistrate, the magistrate found that Mr. Sutton was not entitled to punitive damages. They argue that, under the circumstances, the court needed to hold a hearing and take additional evidence before sustaining Mr. Sutton's objection and awarding him punitive damages.

**{¶20}** The Douglases appear to have overlooked the fact that, after the trial court referred the issue of damages to the magistrate, the magistrate held a hearing on the issue, including whether Mr. Sutton was entitled to punitive damages. At the hearing, Mr. Sutton argued that he was entitled to punitive damages based on the parties' stipulations and the exhibits that the court admitted.

**{¶21}** Civil Rule 53(D)(4)(b) provides that "a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." Rule 53(D)(4)(d) provides:

> In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

We conclude that, under a plain reading of Rule 53(D)(4), it is not mandatory in every case for a trial court to hold another hearing or receive additional evidence before ruling on objections to a magistrate's decision. In this case, the parties presented evidence on the issue of punitive damages to the magistrate. After the magistrate rendered a decision, neither party asserted that they had discovered additional evidence that was unavailable at the prior hearing. Accordingly, the Douglases have failed to demonstrate that it was improper for the trial court to rule on Mr. Sutton's objections based exclusively on the evidence that was presented to the magistrate. The Douglases' fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE GRANTING OF PUNITIVE DAMAGES BY THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶22}** The Douglases' final argument is that the trial court's finding that Mr. Sutton is entitled to punitive damages is against the manifest weight of the evidence. When reviewing the manifest weight of the evidence in a civil case, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

**{¶23}** "Ohio courts, since as early as 1859, have allowed punitive damages to be awarded in tort actions which involve fraud, malice, or insult." *Preston v. Murty*, 32 Ohio St.3d 334, 334 (1987). The Ohio Supreme Court has specifically recognized that punitive damages may be recovered "when appropriate in fraudulent conveyance cases * * *." *Locafrance U.S. Corp. v. Interstate Distribution Servs., Inc.*, 6 Ohio St.3d 198, 202 (1983). "In each case of alleged fraud the plaintiff, in order to be awarded punitive damages, must establish not only the elements of the tort itself but, in addition, must either show that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 12 Ohio St.3d 241 (1984), paragraph three of the syllabus. Although the term "malice" can be difficult to define, the Ohio Supreme Court has explained that it is "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or * * * a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston* at syllabus; *see also Locafrance* at 202 ("[R]ecent pronouncements of this court are consistent in defining malice to include intentional or deliberate behavior.").

{¶24} The Douglases argue that Mr. Sutton did not present any evidence of actual malice. While Mr. Sutton relied exclusively on his exhibits and the parties' stipulations, the Ohio Supreme Court has recognized "that it is rarely possible to prove actual malice otherwise than by conduct and surrounding circumstances." *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36, 37 (1989), quoting *Davis v. Tunison*, 168 Ohio St. 471, 475 (1959). As the Court explained in *Davis*, "actual malice can be presumed in [some] cases. It would be difficult to imagine that one person would kick another downstairs as a mere pleasantry and without the elements of actual malice, hatred, and ill will." *Davis* at 475. "One who has committed an act would scarcely admit that he was malicious about it, and so, necessarily, malice can be inferred from conduct." *Id.*

{¶25} At the evidentiary hearing, Mr. Sutton presented documents regarding his lawsuit against his ex-wife. Those documents indicate that Ms. Sutton conveyed a parcel of real property to Mrs. Douglas within a couple weeks after Mr. Sutton filed a lawsuit against Ms. Sutton. Mr. Sutton also presented evidence that he later amended his complaint to add a claim against Ms. Sutton and Mrs. Douglas for fraudulent conveyance, and that Mrs. Douglas quitclaimed her interest in a different parcel of property to her husband a mere ten days after he filed his amended complaint. The trial court found that, based on Mrs. Douglas's participation in multiple fraudulent conveyances that were designed to eliminate assets in the event of a judgment in Mr. Sutton's favor, it could be inferred that Mrs. Douglas had acted with a spirit of revenge and, thus, actual malice during the second transfer. Upon review of the record, including the history of litigation between the Douglases, their daughter, and Mr. Sutton, we conclude that the trial court did not lose its way when it awarded Mr. Sutton punitive damages from Mrs. Douglas. The Douglases' fifth assignment of error is overruled.

III.

**{¶26}** The Douglases' assignments of error are overruled. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

MOORE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

LARRY D. SHENISE, Attorney at Law, for Appellants.

TIMOTHY HANNA, Attorney at Law, for Appellee.

JAMES CAMPBELL, Attorney at Law, for Appellee.