[Cite as *Lopez v. Thomas*, 2014-Ohio-2513.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

LUTHER LOPEZ

    Appellant

    v.

JAZMINE THOMAS

    Appellee

C.A. No.     27115

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2012 09 5438

DECISION AND JOURNAL ENTRY

Dated: June 11, 2014

WHITMORE, Judge.

{¶1} Plaintiff-Appellant, Luther Lopez, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} In June 2012, Lopez and Defendant-Appellee, Jazmine Thomas, were both employees of Labor Ready, a temporary employment agency. It was customary for Labor Ready employees to ride together to their assigned work locations after reporting to Labor Ready in the morning. On June 11, 2012, Lopez and Thomas were assigned to work at the McJak Candy Company ("McJak Candy") and rode there together.

{¶3} Two days after their shared ride, Thomas supplied Labor Ready with a written statement about Lopez. Thomas wrote that, during their car ride together, Lopez divulged that he was going to file a grievance against their supervisor at McJak Candy. The grievance would accuse the supervisor of racial discrimination. According to Thomas, Lopez said that he was

filing the grievance as a preventative measure because he felt that the supervisor was planning on telling Labor Ready not to assign him to work at McJak Candy anymore. According to Thomas, Lopez also said that he had employed similar tactics with companies in the past to avoid termination or to seek compensation and that he was very knowledgeable about civil law. Thomas told her supervisor at McJak Candy what Lopez had said.

{¶4} The day after Thomas wrote her statement, Lopez drove to Labor Ready and confronted Thomas in the parking lot. When their conversation ended, Thomas went inside and told one of the Labor Ready staff members that Lopez had threatened her. Lopez was then asked to leave the premises. Labor Ready asked Thomas to complete a written statement about the incident, but Thomas did not immediately do so. Instead, she completed a statement on June 22, 2012, eight days after the conversation occurred. In her statement, Thomas wrote that she "was threatened by" Lopez after he asked her whether she had "'snitched' on him." Thomas further wrote that Lopez "said that he was used to f***ing people up that 'snitched' on him because he had been to jail" and that "[h]e told [her] that if he found out that [she] 'snitched' on him he would f*** [her] up too." Unbeknownst to Thomas, Lopez had recorded the conversation that the two of them had in the parking lot.

{¶5} Subsequently, Lopez filed a defamation suit against Thomas for libel and slander per se, alleging that he had been damaged as a result of her attributing statements to him that he had never made. Thomas filed an answer as well as counterclaims for assault and civil liability for criminal conduct under R.C. 2307.60. After the parties exchanged discovery, however, Thomas dismissed her counterclaims. The matter proceeded to a bench trial.

{¶6} At the close of Lopez' case-in-chief, Thomas moved for a directed verdict. The court granted a directed verdict with regard to the verbal statements that Thomas had made.

Specifically, the court found that Lopez had failed to prove that Thomas' oral statements (that she was threatened by Lopez) were false. The court denied the motion for directed verdict with regard to Thomas' written statements, however, and the defense presented its case-in-chief. At the close of the evidence, the court entered a judgment of dismissal in favor of Thomas.

**{¶7}** Lopez now appeals and raises five assignments of error for our review. For ease of analysis, we consolidate all five assignments of error.

## II

### Assignment of Error Number One

THE COURT ERRED BY NOT APPLYING THE CORRECT STANDARD IN REGARD TO APPELENTS (sic) BURDEN AS TO PROOF OF NEGLIGENCE IN LIGHT OF THE FACT THAT APPELLEES (sic) CONDUCT WAS AN ASPECT OF NEGLIGENCE AS SHOWN BY THE EVIDENCE AND TESTIMONY PRESENTED.

### Assignment of Error Number Two

THE COURT ERRED IN ASSUMING SOME SPECIFIC OR RELATED GROUNDS FOR RELIEF WAS PRESENTED BY APPELLEE'S COUNSEL YET NO SUBSTANTIAL OR SPECIFIC REASON FOR THE DIRECTED VERDICT WAS PRESENTED TO THE COURT.

### Assignment of Error Number Three

THE COURT ERRED IN NOT EMPLOYING A RECKLESSNESS STANDARD IN FAILING TO CONSIDER THAT THE APPELLEE'S *CONDUCT WAS IN ITSELF RECKLESS AND ESTABLISHED NEGLIGENCE.* (Emphasis sic.)

### Assignment of Error Number Four

THE COURT ERRED BY NOT WEIGHING SUFFICIENCY OF THE TESTIMONY AND AUDIO/VIDEO EVIDENCE IN A LIGHT MOST FAVORABLE TO APPELLANT.

### Assignment of Error Number Five

THE COURT ERRED IN NOT APPLYING A CLEAR AND CONVINCING EVIDENCE STANDARD WHEN IT DETERMINED WHETHER THE APPELLEES (sic) DIRECTED VERDICT ESTABLISHED ANY PROXIMATE

CAUSE TO OUTWEIGH THE MANIFEST WEIGHT OF THE EVIDENCE OR TESTIMONY.

{¶8} In his assignments of error, Lopez argues that the trial court applied the incorrect legal standard when analyzing various concepts and that its ultimate decision to enter judgment in favor of Thomas was in error. We disagree.

{¶9} Initially, we note that Lopez represented himself in the court below and also appears pro se on appeal. With respect to pro se litigants, this Court has observed that

> pro se litigants should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities. However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes. This Court, therefore, must hold [pro se appellants] to the same standard as any represented party.

(Internal citations omitted.) *Sherlock v. Myers*, 9th Dist. Summit No. 22071, 2004-Ohio-5178, ¶ 3; *Countrywide Home Loans Servicing, L.P. v. Murphy-Kesling*, 9th Dist. Summit No. 25297, 2010-Ohio-6000, ¶ 4. "[W]hile this Court has made every effort to determine and address the merits of [Lopez'] contentions, he is subject to the same rules and procedures as if he were represented by an attorney." *State v. Charlton*, 9th Dist. Lorain No. 12CA010206, 2014-Ohio-1330, ¶ 6.

{¶10} "Defamation is a false publication that injures a person's reputation." *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (9th Dist.1996). "Written defamation is known as libel; spoken defamation is known as slander." *Id.* at 206. "To prevail in a defamation case, a plaintiff who is a private person must prove five elements: '(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused

special harm to the plaintiff.'" *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 2009-Ohio-2612, ¶ 7 (9th Dist.), quoting *Gosden* at 206. Damages are presumed if the matter is defamatory per se, but a defamation plaintiff still must prove the remaining elements of his or her defamation case. *See Gosden* at 209.

{¶11} "Insofar as the truth or falsity of the defamatory statement is concerned, the question of negligence has sometimes been expressed in terms of the defendant's state of mind by asking whether he had reasonable grounds for believing that the communication was true." *Bays v. Northwestern Local School Dist.*, 9th Dist. Wayne No. 98CA0027, 1999 WL 514029, *4 (July 21, 1999), quoting 3 Restatement of the Law 2d, Torts, Section 580(B), Comment g (1977). "[T]he plaintiff must prove by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication." *Lansdowne v. Beacon Journal Pub. Co.*, 32 Ohio St.3d 176, 180 (1987). *Accord Gosden* at 213. "Clear and convincing evidence is that measure or degree of proof which * * * will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**Oral Statements**

{¶12} In his case-in-chief, Lopez called Thomas on cross-examination. Thomas testified that she and Lopez were riding together to McJak Candy one day when he told her that he was going to file a race-based grievance against their supervisor as leverage to protect himself against possible employment action. Thomas admitted that she completed a written statement for Labor Ready on June 13, 2012, to document the conversation. She also admitted that she told her supervisor at McJak Candy about the grievance that Lopez planned on filing.

{¶13} Thomas testified that she was already at Labor Ready on the morning of June 14, 2012, when Lopez came inside and asked her to step outside with him. Once the two were outside, Lopez informed Thomas that he was almost twice her age and had been to prison before, so he had more life experience. Thomas testified that Lopez gave her a "history about people who have snitched on other people and have received [] serious bodily harm or even death." Thomas further testified that Lopez made her feel very uncomfortable and that she took his speech as a threat. Thomas admitted that, when the conversation ended and she went back inside, she told one of the Labor Ready supervisors that Lopez had threatened her. She further admitted telling several other individuals that Lopez had threatened her. Thomas explained that she said Lopez had threatened her because that was how she felt after their conversation.

{¶14} Lopez indicated that his conversation with Thomas was spontaneous. According to Lopez, he drove to Labor Ready on June 14th to let them know that he would not be working that day and he simply ran into Thomas in the parking lot. Lopez testified that he never threatened Thomas, but that he confronted her because he suspected that she had shared their private conversation with their supervisor. According to Lopez, Thomas had a reputation for discussing the affairs of her fellow employees with their employer and he wanted to warn her that, if she continued to report her fellow employees, someday someone might become violent with her. Lopez claimed that he told Thomas about his time in prison because he wanted her to know that, even in a supposedly secure facility, people who inform on others often suffer repercussions. Lopez testified that his statements to Thomas were "just a lesson for her."

{¶15} Lopez presented a recording of the conversation that he had with Thomas in the parking lot. The recording is both an audio and visual recording, but the visual component is lacking because the recording device was attached to Lopez' wrist and subjected to virtually

constant movement. On the recording, Lopez can be heard asking Thomas her age, comparing it to his own, telling her about his time in prison, and questioning her about her familiarity with history, including the history of slavery and the civil rights movement. Lopez never overtly threatens Thomas on the recording, but makes multiple statements about the consequences people have suffered throughout history after deciding to inform on other people. Moreover, he continues to do so even after Thomas repeatedly states that he is offending her and that she does not understand why he is "coming at [her]" in that manner. The tone Lopez adopts while speaking with Thomas is a careful, but not congenial, one.

{¶16} Lopez argued that Thomas committed slander when she told others that he had threatened her. The trial court rejected his argument and directed a verdict in Thomas' favor. Lopez argues that the court erred by doing so because Thomas' motion for directed verdict failed to satisfy the specificity requirements of Civ.R. 50. He further argues that (1) the court's decision is against the weight of the evidence, (2) defense counsel impugned his character by discussing his "time served for past acts in the penitentiary," (3) defense counsel relied upon hearsay, (4) defense counsel "assume[d] facts not in evidence" by telling the court that Lopez had filed suit against McJak Candy and Labor Ready for retaliation, and (5) defense counsel improperly told the court that he believed Thomas' oral statements that Lopez had threatened her were accurate.

{¶17} "Although the trial court labeled its decision a directed verdict, it was actually an involuntary dismissal under Civ.R. 41(B)(2)." *Hill Hardman Oldfield, L.L.C. v. Gilbert*, 190 Ohio App.3d 743, 2010-Ohio-5733, ¶ 8 (9th Dist.). That is because motions for directed verdict under Civ.R. 50 are "only appropriate when a matter is being tried to a jury." *McGill v. Image Scapes, LLC*, 9th Dist. Medina No. 10CA0043-M, 2010-Ohio-6246, ¶ 6. While a motion for

directed verdict challenges the sufficiency of the evidence and requires the court to view all the evidence in a light most favorable to the non-moving party, a motion for involuntary dismissal under Civ.R. 41(B)(2) does not. *Alh Properties, P.L.L. v. Procare Automotive Service Solutions, L.L.C.*, 9th Dist. Summit No. 20991, 2002-Ohio-4246, ¶ 9. In ruling on an involuntary dismissal under Civ.R. 41(B)(2), "the court weighs the evidence, resolves any conflicts, and may render judgment in favor of the defendant if the plaintiff has shown no right to relief." *Id.*

{¶18} Because Thomas' motion for a directed verdict was, in actuality, a motion for involuntary dismissal, Civ.R. 50 did not apply to it. *See McGill* at ¶ 6. We, therefore, reject Lopez' argument that the court should have denied the motion on procedural grounds, for failure to comply with Civ.R. 50. Next, we consider whether the court's decision was against the manifest weight of the evidence. *See Alh Properties, P.L.L.* at ¶ 10.

> When reviewing the manifest weight of the evidence in a civil case, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."

*Sutton v. Douglas*, 9th Dist. Summit No. 26958, 2014-Ohio-1337, ¶ 22, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶19} The trial court noted that Lopez' slander claim required him to prove that Thomas' oral statements (that Lopez had threatened her) were false. The court determined that Lopez had failed to do so, so he was not entitled to relief. Lopez argues that the court's decision is against the manifest weight of the evidence because Thomas repeatedly contradicted herself at trial. His brief contains numerous transcript citations in support of his argument, but the citations cover a large portion of Thomas' testimony as well as portions of her counsel's opening statement. This Court is unable to discern how the citations relate to Lopez' argument that

Thomas contradicted herself.  Accordingly, we focus on the two specific instances of alleged contradiction that Lopez discusses in his brief.

{¶20}  On cross-examination, Thomas initially testified that she did not immediately tell her supervisor at McJak Candy about the grievance Lopez planned to file.  Lopez then showed Thomas the written statement she completed on June 13, 2012.  In the statement, Thomas wrote that she told her supervisor at McJak Candy about Lopez' grievance on the same day that she found out about the grievance from Lopez.  After reviewing her written statement, Thomas conceded that she must have told her supervisor about the grievance on the same day that she found out about it.  She testified that she just did not remember doing so.  Lopez points to the foregoing as evidence that Thomas gave conflicting testimony.  He also argues that Thomas contradicted herself when she testified that she "ha[d] no knowledge of grievance procedures yet file[d] a grievance."

{¶21}  Once Lopez showed Thomas her written statement from June 13th, she fully acknowledged that she had made a mistake about the timing of when she told her supervisor at McJak Candy about Lopez' grievance.  Further, there is no evidence in the record that Thomas filed a "grievance" against Lopez.  Thomas completed written statements at Labor Ready's request to record (1) what Lopez told her during their car ride, and (2) what happened during their exchange in the parking lot.  It is not clear from the record that Thomas understood what Lopez meant when he asked her whether she had knowledge of Labor Ready's grievance procedures.  In any event, the trial court was in the best position to view Thomas and to assess her credibility with regard to her alleged contradictions.  *See Magnum Steel & Trading, L.L.C. v. Mink*, 9th Dist. Summit Nos. 26127 & 26231, 2013-Ohio-2431, ¶ 29.

{¶22} Although Lopez never directly threatened to harm Thomas on the recording he presented at trial, threats need not always be overt. Lopez couched his statements in terms of generalities, but they conveyed the message that people who betray others to their superiors have reason to fear for their safety. Moreover, Lopez' statements must be viewed in context. Lopez did not convey the foregoing message to Thomas for no reason. He did so because he suspected that she had just told their superiors about his plan to file a grievance.

{¶23} Thomas explained that the reason she said Lopez had threatened her was that, as a result of their conversation, that is how she felt. Having reviewed the record, we cannot conclude that the trier of fact clearly lost its way and created a manifest miscarriage of justice when it chose to believe her and concluded that her statements were not false. *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20. We, therefore, reject Lopez' argument that the trial court's decision is against the manifest weight of the evidence.

{¶24} To the extent Lopez argues that defense counsel improperly impugned his character and relied upon hearsay, we note that Lopez was responsible for the introduction of that evidence. Lopez entered the recording of his conversation with Thomas into evidence. In the recording, Lopez tells Thomas about his experiences in prison. Near the end of the recording, a Labor Ready supervisor approaches Lopez and makes several statements to him, including that Lopez is making him feel uncomfortable. The supervisor's recorded statements are the "hearsay" statements that Lopez claims defense counsel improperly relied upon. Because Lopez introduced the recording into evidence, however, he cannot now complain that either the court or defense counsel relied upon certain aspects of its content. *See State v. Campbell*, 90 Ohio St.3d 320, 324 (2000), quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio

St.3d 20 (1986), paragraph one of the syllabus ("The doctrine of invited error holds that a litigant may not 'take advantage of an error which he himself invited or induced.'").

{¶25} Finally, to the extent Lopez argues that defense counsel improperly told the court about another suit Lopez had filed and stated his personal opinion about the veracity of Thomas' statements, we note that this was a bench trial. "There is a presumption in a bench trial that the trial judge knows and follows the law, and only considers matter properly before it." *State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 45. Even assuming that defense counsel's statements were improper, Lopez has not explained how the statements prejudiced his case.

{¶26} In sum, Lopez has not shown that the trial court erred by entering judgment in Thomas' favor with respect to Lopez' claim of slander.

**Written Statements**

{¶27} After her encounter with Lopez in the parking lot on June 14, 2012, Labor Ready asked Thomas to complete a written statement about the incident. Thomas testified that she did not have time to write out a statement that day because she was busy working. Instead, she arranged to arrive early at work on June 22, 2012, to complete the statement. Her written statement reads as follows:

> I Jazmine Thomas was threatened by Luther Lopez. He came to Labor Ready and asked me to come outside. I went outside and he asked me if I "snitched" on him about writing a grievance against [the supervisor] from McJak [Candy]. I said no and asked him why he would ask me that. He stated that he felt like I was watching him at work and I told him that he was just being paranoid. He then began to tell me that he was 40 yrs old and I was only 21 so he knows more than me. He said that he was used to f[***]ing people up that "snitched" on him because he had been to jail. He told me that if he found out that I "snitched" on him he would f[***] me up too. I was offended and afraid so I went inside and told [the supervisors at Labor Ready].

Thomas testified that her written statement was not meant to convey exactly what Thomas had told her. She testified that she wrote the statement based on how she felt about what Lopez had said, which she took as "more of * * *an indirect * * * threat to me."

{¶28} Lopez argued that Thomas committed libel when she attributed threatening statements to him that he never made, as evidenced by the recording of his conversation with her. The trial court acknowledged that Lopez never used the exact words contained in Thomas' statement, but determined that her statement was not meant to convey exact quotes. The court held that Thomas relied upon colloquialisms in recalling her conversation with Lopez and that Thomas "took [her conversation with Lopez] as * * * any reasonable human being would have taken it." The court noted that Lopez was "street savvy" and his message to Thomas was clear: "don't snitch or else." The court determined that Thomas was entitled to judgment because her written statements were neither false, nor negligently made.

{¶29} As the libel plaintiff, Lopez had to prove, by clear and convincing evidence, that Thomas was at least negligent in conveying false statements to others. *See Lansdowne*, 32 Ohio St.3d at 180; *Northeast Ohio Elite Gymnastics Training Ctr., Inc.*, 183 Ohio App.3d 104, 2009-Ohio-2612, at ¶ 7, quoting *Gosden*, 116 Ohio App.3d at 206. To do so, he had to prove that Thomas lacked reasonable grounds for believing that her written statements were true. *See Bays*, 1999 WL 514029, at *4. Having reviewed the record, we cannot conclude that the trial court lost its way when it determined that Thomas was entitled to a judgment of dismissal.

{¶30} Thomas did not have the recording of her conversation with Thomas with her when she completed her written statement eight days after the incident. Instead, Thomas relied upon her memory to document the incident and acknowledged at trial that her statement did not reflect the exact words that Thomas had used. Notably, while Thomas used quotations marks to

denote the word "snitched" in her statement, she did not use quotations marks when writing down that Lopez said he was "used to f[***]ing people up that 'snitched' on him" and would "f[***] [her] up too" if he found out that she had done so. *See generally Brooks v. Lady Foot Locker*, 9th Dist. Summit No. 22297, 2005-Ohio-2394, ¶ 48-49 (plaintiffs failed to prove statement was false and defamatory when defendant only stated he had a suspicion that they had stolen items from a store and plaintiffs did not provide any direct quotes to substantiate their testimony). This Court has reviewed the recording of the conversation between Lopez and Thomas. Considering the recording in the context of the events at issue here, we must conclude that Thomas had reasonable grounds to believe that her written statements were true. *See Bays* at *4. Consequently, Lopez failed to prove, by clear and convincing evidence, that Thomas was negligent in conveying her statements to others. *See id.* The trial court did not err by entering a judgment of dismissal on Thomas' behalf with regard to Lopez' claim for libel.

{¶31} The record supports the trial court's decision to enter judgment in favor of Thomas. As such, Lopez' assignments of error are overruled.

III

{¶32} Lopez' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.


APPEARANCES:

LUTHER LOPEZ, pro se, Appellant.

RONALD T. GATTS, Attorney at Law, for Appellee.