[Cite as *Buckeye Corrugated, Inc. v. Cincinnati Ins. Co.*, 2013-Ohio-3508.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

BUCKEYE CORRUGATED, INC.

    Appellant

    v.

THE CINCINNATI INSURANCE
COMPANY

    Appellee

C.A. No.    26634

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2011-05-2467

DECISION AND JOURNAL ENTRY

Dated: August 14, 2013

WHITMORE, Judge.

{¶1} Appellant, Buckeye Corrugated, Inc. ("BCI"), appeals from the judgment of the Summit County Court of Common Pleas, granting The Cincinnati Insurance Company's ("CIC") motion to compel discovery. This Court reverses.

I

{¶2} In 2005, Roy Allen, a former BCI director, shareholder, and employee, filed suit against BCI. In a separate action, BCI filed suit against Allen. The court consolidated the cases and counterclaims were filed.

{¶3} It is undisputed that some, but not all, of Allen's claims were covered by BCI's insurance policy with CIC. BCI, with CIC's consent, hired counsel to defend the suit against Allen. In accordance with the policy terms, BCI's attorneys kept CIC's attorney informed on the progress of the litigation, including discussions of settlement. A settlement between BCI and

Allen was eventually reached. *See Allen v. Bennett*, 9th Dist. Summit No. 25252, 2011-Ohio-1210.

{¶4} In May 2011, BCI filed a complaint against CIC for breach of contract, bad faith, and a declaratory judgment concerning the allocation of obligations under the BCI/Allen settlement agreement. CIC filed a motion for discovery, seeking comprehensive disclosure of all documents and communications related to Allen's lawsuit against BCI, BCI's lawsuit against Allen, and the counterclaims. Additionally, CIC sought discovery of documents related to a lawsuit brought against BCI by a Scott Allen. BCI filed a memorandum in opposition to CIC's motion to compel, arguing the communications and documents were protected by attorney-client privilege and/or work-product.

{¶5} Based on CIC's motion to compel and BCI's brief in opposition, the trial court granted CIC's motion and ordered BCI to disclose all requested documents, materials, and communications. BCI now appeals and raises three assignments of error for our review. To facilitate the analysis, we rearrange and consolidate some of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN GRANTING CIC'S MOTION TO COMPEL THE PRODUCTION OF [BCI'S] PRIVILEGED INFORMATION ON THE GROUNDS THAT (1) THE INFORMATION IS EXEMPT FROM THE PROTECTIONS OF THE ATTORNEY-CLIENT PRIVILEGE; AND (2) [BCI] MADE A SUBJECT-MATTER WAIVER OF ITS PRIVILEGED INFORMATION.

{¶6} In its first assignment of error, BCI argues that the court erred in concluding that the information requested by CIC was not privileged.

{¶7} "Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. However, if the discovery issue involves an alleged privilege, as in this case, it is a

question of law that must be reviewed de novo." (Internal citations omitted.) *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 13.

**Attorney-Client Privilege**

{¶8} "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 16, quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). "The privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin* at 403, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 18. R.C. 2317.02(A), in relevant part, provides:

> The following persons shall not testify in certain respects:
>
> (A) (1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client * * *. However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.
>
> * * *
>
> (2) An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

**{¶9}** The attorney-client privilege provides that "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *State ex rel. Leslie* at ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir.1998). "The attorney-client privilege reaches far beyond a proscription against testimonial speech. The privilege protects against any dissemination of information obtained in the confidential relationship." *American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991).

a. Exception

**{¶10}** "Unlike *waiver*, which involves the client's relinquishment of the protections of R.C. [2317.02(A)] once they have attached, an *exception* to the attorney-client privilege falls into the category of situations in which the privilege does not attach to the communications in the first instance * * *." (Emphasis sic.) *Squire, Sanders & Dempsey, L.L.P.*, 127 Ohio St.3d 161, 2010-Ohio-4469, at ¶ 47. Ohio recognizes several exceptions to the attorney-client privilege. Exceptions include: (1) the crime-fraud exception, (2) the lack of good faith exception, (3) the joint-representation exception, and (4) the self-protection exception. *Id*. at ¶ 24-43.

**{¶11}** Here, the trial court found that the materials requested by CIC were "exempt" from the attorney-client privilege. While the language used by the trial court is a bit unclear, read in its entirety, we conclude the trial court found that no privilege had attached to the requested materials because of an exception.

i.  Joint-Representation Exception

**{¶12}**  The joint-representation exception applies "when the *same attorney acts for two parties* having a common interest, and each party communicates with him."  (Emphasis sic.) *Emley v. Selepchak*, 76 Ohio App. 257, 262 (9th Dist.1945), quoting 8 Wigmore on Evidence, Section 2312 (3d Ed.1940).  The exception "provides that a client of an attorney cannot invoke the privilege in litigation against a co-client." *Squire, Sanders & Dempsey, L.L.P.* at ¶ 32.

**{¶13}**  Here, the same attorney did not act for two parties.  BCI was represented by attorneys from Roetzel & Andress and Thompson Hine.  CIC retained its own attorney, Victor Peters.  In December 2005, Peters sent BCI a letter expressly stating that his law firm had "been retained by [CIC] to conduct an investigation and analysis of whether, or the extent to which, coverage is available" under the insurance policy for the Allen lawsuit.  Peters went on to explain that he had "been retained by [CIC] to monitor [the Allen] lawsuit and to work with [BCI] and defense counsel during the pendency of this case to analyze [BCI's] potential risk exposure."  Because BCI and CIC had retained their own attorneys, the joint-representation exception is not applicable here.

ii.  Common Interest Exception

**{¶14}**  Similar to the joint-representation exception is the common interest exception. The common interest exception is "[a]nother step beyond the joint client situation * * * where two or more clients, each represented by their own lawyers, meet to discuss matters of common interest - commonly called a joint defense agreement or pooled information situation.  * * * Although it originated in the context of criminal cases, the doctrine has been applied in civil cases and to plaintiffs in litigation as well as defendants." *State ex rel. Bardwell v. Ohio Atty.*

*Gen.*, 181 Ohio App.3d 661, 2009-Ohio-1265, ¶ 87 (10th Dist.), quoting McCormick, *Evidence*, Section 91.1, at 413-414 (6th Ed.2006).

{¶15} To fall within the common interest exception, it must be shown that "(1) the communications were made in the course of a joint defense effort; [and] (2) the statements were designed to further the effort * * *." *Travelers Cas. and Sur. Co. v. Excess Ins. Co. Ltd.*, 197 F.R.D. 601, 606 (S.D.Oh. 2000), quoting *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.3d 120, 126 (3d Cir.1986). The common interest exception should be construed narrowly. *Cigna Ins. Co. v. Cooper Tires and Rubber, Inc.*, N.D.Ohio No. 3:99CV7397, 2001 WL 640703, *2 (May 24, 2001). Therefore, the exception will only apply where the "disclosures are made in the course of formulating a common legal strategy." (Internal quotations and citations omitted.) *Id.*

{¶16} Generally, the common interest exception is used to protect communications from being disclosed to a third party. Here, one of the parties is attempting to force the disclosure of additional communications by the other party. Specifically, CIC is attempting to reach communications BCI decided not to share. We have found no case law to support the proposition that a party in a joint defense arrangement must disclose all matters related to the common interest with the other party. Further, we decline to extend this exception to the facts in this case.

{¶17} CIC had unequivocally notified BCI of its reservation of rights. Both CIC and BCI retained their own counsel. Under the insurance policy, BCI was required to keep CIC informed of the status of the litigation, provide certain assessment and billing reports, and seek approval prior to any settlement. A review of the record reflects the communications between BCI and CIC were in keeping with these terms, rather than the two parties formulating a

common legal strategy. Given these facts, we cannot conclude the common interest exception applies.

### iii. Lack of Good Faith Exception

{¶18} Under the lack of good faith exception, "[d]ocuments and other things showing the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf are wholly unworthy of the protections afforded by any claimed privilege." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 661 (1994). In its complaint, BCI alleged that CIC failed to provide a good faith defense and acted unreasonably and in bad faith.

{¶19} In the usual case, an insured alleges an insurer lacked good faith in handling his or her claim. The lack of good faith exception permits the insured to access communications of the insurer that would otherwise be protected by attorney-client privilege. Here, BCI, the insured, has alleged lack of good faith against CIC, the insurer. However, it is CIC that has requested documents from BCI. CIC is not looking for documents evidencing a lack of good faith. Instead, it is looking for materials to rebut the allegations that it acted in bad faith. This is not a logical extension of the lack of good faith exception. CIC is able to defend against the allegations by simply presenting to the court what information it had when it made its decisions. The relevant inquiry is what CIC knew at the time it allegedly acted in bad faith.

{¶20} Upon review, we conclude that none of the exceptions to the attorney-client privilege apply to the materials requested by CIC. Thus, the trial court erred in making such a finding.

### b. Waiver

{¶21} In addition to exceptions, the attorney-client privilege may also be waived. "R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between

an attorney and a client can be waived." *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, paragraph one of the syllabus. The Ohio Supreme Court has "decline[d] to add a judicially created waiver to the statutorily created privilege." *Id.* at ¶ 12, quoting *State v. McDermott*, 72 Ohio St.3d 570, 574 (1995).

**{¶22}** Because the trial court found that privilege did not attach to the requested material, it declined to address the issue of waiver. Having concluded that the court erred in finding an exception applies, we remand the case for the trial court to address the issue of waiver of the attorney-client privilege in the first instance.

**Work-Product Doctrine**

**{¶23}** Distinct from the issue of attorney-client privilege is the issue of work product. The work-product doctrine "provides a *qualified* privilege protecting the attorney's mental processes in preparation of litigation, establishing 'a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary.'" (Emphasis sic.) *Squire, Sanders & Dempsey, L.L.P.*, 127 Ohio St.3d 161, 2010-Ohio-4469, at ¶ 55, quoting *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir.2006). The work-product doctrine is evidenced in Civ.R. 26(B)(3), which provides, in part:

> Subject to the provisions of subdivision (B)(5) of this rule [regarding experts], a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor.

The Ohio Supreme Court has found that "a waiver of the attorney-client privilege does not necessarily constitute a waiver of exemption under Civ.R. 26(B)(3)." *In re Election of Nov. 6 1990 for Office of Atty. Gen. of Ohio*, 57 Ohio St.3d 614, 615 (1991).

{¶24}  Here, the trial court did not address the issue of the work-product doctrine. Instead, the court concluded there was no privilege at all and required BCI to "produce [all of] the documents, materials, and communications sought in CIC's discovery requests."  The trial court erred in failing to distinguish between attorney-client communications and attorney work-product.  Therefore, we remand the case for the court to determine what requests are work-product and whether CIC has shown good cause to permit their disclosure.

{¶25}  BCI's first assignment of error is sustained.

<u>Assignment of Error Number Two</u>

THE TRIAL COURT ERRED BY NOT EXPLICITLY REJECTING CIC'S OTHER ARGUMENTS IN CIC'S MOTION.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ERRED BY ISSUING AN OVERLY BROAD ORDER WITHOUT CONDUCTING AN *IN CAMERA* REVIEW OF THE MATERIALS AT ISSUE.

{¶26}  In its second and third assignments of error, BCI argues that the court erred in not addressing CIC's alternative arguments and ordering disclosure without conducting an in camera review of the documents.  In light of our resolution of BCI's first assignment of error, these arguments are not yet ripe for review, and we decline to address them.

III

{¶27}  BCI's first assignment of error is sustained.  BCI's second and third assignments of error are not ripe for review.  The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT

CARR, J.
CONCURS.

BELFANCE, P.J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MICHAEL BRITTAIN and K. JAMES SULLIVAN, Attorneys at Law, for Appellant.

NANCY K. TORDAI, Attorney at Law, for Appellee.

RONALD H. ISROFF, Attorney at Law, for Appellee.