[Cite as *Stepka v. McCormack*, 2016-Ohio-3103.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| RONALD W. STEPKA | C.A. No. 14CA010611 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS A. MCCORMACK | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 13CV180617 |

DECISION AND JOURNAL ENTRY

Dated: May 23, 2016

MOORE, Judge.

{¶1} Defendant, Thomas A. McCormack, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms in part, reverses in part, and remands this matter for further proceedings consistent with this decision.

I.

{¶2} Ronald and Erin Stepka ("Husband" and "Wife" respectively) were married with two minor daughters, living in Avon Lake, Ohio. Husband worked as a firefighter. Because of the flexibility in his work schedule, Husband was the primary caregiver to the parties' daughters. Wife was a medical doctor who worked in Cleveland. Wife lost her job, and could not seek employment in an area in geographic proximity to the family's marital home due to a non-compete provision in her contract. She and Husband began looking for employment opportunities for Wife out-of-state. At some point in the summer of 2010, Husband learned that

Wife intended to move to Minnesota permanently with the parties' children. However, he wished to remain in Ohio with their children.

{¶3} As a result, Husband retained Mr. McCormack, an attorney licensed in Ohio, to pursue a legal separation action in Lorain County, so that he could retain possession of his children in Ohio. It is unclear where the children were located at the time that Husband retained Mr. McCormack. Mr. McCormack filed in the Lorain County Domestic Relations Court a complaint for legal separation and a motion to order the children returned to Ohio. Mr. McCormack also moved the court for a restraining order, which, in part, sought to restrain Wife from permanently taking the children out of the state of Ohio. The trial court immediately granted a standard restraining order pertaining to harassment, finances, and health insurance, but the order did not then address Wife's ability to remove the children from Ohio. Mr. McCormack was aware of a local rule ("Loc.R. 11") through which he could obtain an ex parte order restraining Wife from removing the children from Ohio, but he did not obtain such an order on Husband's behalf.

{¶4} Within five days after the filing of his complaint, Husband informed Mr. McCormack that the children were in Ohio and staying with him. However, later that month, while the children were under the care of Husband's sister, Wife and/or Wife's sister removed the children from Ohio and relocated them to Minnesota. Later in the proceedings in the Lorain County Domestic Relations Court, Wife filed a counterclaim for divorce.

{¶5} The children remained in Minnesota during the pendency of the domestic action in Lorain County. The Lorain County Domestic Relations Court appointed a guardian ad litem, who visited the children in Minnesota approximately seven months after they had been relocated there. After the guardian's investigation, he recommended that the children remain in Minnesota

with Wife. As part of his reasoning, the guardian cited that the children were comfortable, and had readjusted, in Minnesota. However, the guardian opined that, if the children had remained in Ohio during the proceedings, he would not have been surprised if the children would have expressed opinions regarding their comfort, schooling, and recreational activities in Ohio which were as favorable as their opinions as to these activities in Minnesota.

{¶6} In June of 2011, Mr. McCormack sought permission from Husband to dismiss his complaint for legal separation, advising Husband that doing so would provide them with "more leeway" if the parties did not settle. Husband responded that he granted permission to proceed in that manner if counsel believed it would improve his case. On June 17, 2011, Mr. McCormack voluntarily dismissed the complaint for legal separation so that the parties could proceed on Wife's counterclaim for divorce. However, the same day that Mr. McCormack dismissed the complaint, Wife dismissed her counterclaim for divorce. Also, on the same day, Wife prepared divorce proceedings in Minnesota, and effectuated service on Husband.

{¶7} Thereafter, Mr. McCormack advised Husband that he should retain counsel in Minnesota, and he advised Husband that he was seeking an ethical opinion pertaining to his continued representation of Husband. Mr. McCormack did not re-file the complaint in Ohio.

{¶8} Husband retained counsel in Minnesota. Thereafter, Husband and Wife reached a settlement in the Minnesota divorce action, agreeing upon the division of assets and liabilities, and agreeing that the parties would have joint custody of their children, with Wife being the primary residential custodian.

{¶9} On July 3, 2012, Husband filed a complaint for legal malpractice against Mr. McCormack in Cuyahoga County, Ohio. The parties unsuccessfully attempted mediation, after

which Husband voluntarily dismissed his complaint on June 10, 2013. Husband then refiled his complaint in Lorain County on June 14, 2013, which is the present case.

{¶10} During the discovery phase of the present litigation, Mr. McCormack sought disclosure of Husband's file with his Minnesota counsel. Husband objected on the basis of attorney-client privilege. Thereafter, Mr. McCormack moved to compel production of the file. Husband produced materials from his Minnesota counsel's file that he acknowledged were not privileged, and Husband moved for a protective order on the basis of attorney-client privilege for the remaining materials in the file, consisting of communications directly between Husband and successor counsel. The trial court concluded that these communications were protected by attorney-client privilege, which was not waived, and to which no exception applied. Consequently, the court denied Mr. McCormack's motion and granted Husband a protective order.

{¶11} Mr. McCormack then filed a motion for summary judgment, in which he included an argument that no question of fact existed that the statute of limitations barred Husband's action. Husband filed a cross-motion for partial summary judgment on the issue of the statute of limitations. The trial court concluded that no question of fact existed that the action was not barred by the statute of limitations. Accordingly, the trial court denied Mr. McCormack's motion, and granted Husband's motion, on this issue.

{¶12} The case proceeded to bench trial, and Mr. McCormack moved for a directed verdict on the issue of damages for mental anguish, arguing that Husband had not provided evidence sufficient to establish such damages. The trial court granted the motion with respect to "a claim for the negligent infliction of emotional distress," but denied the motion with respect to "a general claim for mental anguish as a part of noneconomic damages[.]" Thereafter, the trial

court found in favor of Husband. In a journal entry dated June 3, 2014, the trial court awarded Husband damages in the amount of $450,000, with $150,000 of these damages attributable to Husband's noneconomic damages arising from the loss of a greater amount of parenting time of his children, which the court concluded caused him anguish.

{¶13} Mr. McCormack timely appealed, and he now raises six assignments of error for our review. We have consolidated certain assignments of error to facilitate our discussion.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY GRANTING [HUSBAND'S] MOTION FOR PROTECTIVE ORDER AND DENYING [MR.] MCCORMACK'S MOTION TO COMPEL.

{¶14} In his first assignment of error, Mr. McCormack argues that the trial court erred in granting Husband's motion for a protective order, and denying Mr. McCormack's motion to compel disclosure of communications between Husband and his Minnesota attorney. We disagree.

{¶15} "Parties have a right to liberal discovery of information under the Rules of Civil Procedure." *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 9. "Discovery may be obtained through 'deposition upon oral examination or written questions; written interrogatories; production of documents, electronically stored information, or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission.'" *Id.*, quoting Civ.R. 26(A).

{¶16} "Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard." *Ward* at ¶ 13, citing *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 58 Ohio St.3d 147, 151-152 (1991). "However, if the discovery issue involves an alleged privilege, as in this case, it

is a question of law that must be reviewed de novo." *Ward* at ¶ 13, citing *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13.

**{¶17}** "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." (Citations omitted.) *Buckeye Corrugated, Inc. v. Cincinnati Ins. Co.*, 9th Dist. Summit No. 26634, 2013-Ohio-3508, ¶ 8. "The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." (Internal quotations and citations omitted.) *Id.* "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." (Citations omitted.) *Id.*

**{¶18}** R.C. 2317.02(A), provides, in relevant part:

The following persons shall not testify in certain respects:

(A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client * * *. However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

* *

(2) An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

**{¶19}** "The attorney-client privilege provides that '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence

permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.'" *Buckeye Corrugated, Inc.* at ¶ 9, quoting *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir.1998). "The attorney-client privilege reaches far beyond a proscription against testimonial speech. The privilege protects against any dissemination of information obtained in the confidential relationship." *Buckeye Corrugated, Inc.* at ¶ 9, quoting *American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991). *See also Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 18 (R.C. 2317.02 applies not just to testimonial privilege, but also to "sought-after communications during the discovery process.") (Citation omitted.).

{¶20} Here, Mr. McCormack claimed that Husband waived the attorney-client privilege between himself and his successor counsel by placing protected information at issue in this case. Mr. McCormack argues that doing so amounted to an implied waiver of the privilege under the test enunciated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975) .

{¶21} However, in *Jackson v. Greger*, 110 Ohio St.3d 488, 490, 2006-Ohio-4968 (2006), the Ohio Supreme Court held that "R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *Id.* at paragraph one of the syllabus; *see also Squire* at ¶ 44. In doing so, the *Jackson* Court declined to apply the implied waiver of the privilege test under *Hearn*. *Jackson* at ¶ 13.

{¶22} In his brief, Mr. McCormack maintains that *Jackson* was limited to the facts of that case. However, the Court clearly announced in the syllabus that the exclusive means of waiving the privilege are those set forth in the statute. *Jackson* at syllabus. Moreover, the relevant facts of this case are similar to those in *Jackson*, and Mr. McCormack has not developed

an argument distinguishing *Jackson* from the present case. Further, the Ohio Supreme Court has cited this aspect of the *Jackson* holding with approval in a subsequent case. *Squire* at ¶ 44 ("*Jackson* dealt with the question of whether to recognize the doctrine of implied waiver of the attorney-client privilege as articulated in *Hearn*[.] Applying *State v. McDermott*[,] 72 Ohio St.3d 570 [(1995)], the court explained that R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived.") Therefore, we conclude that the trial court did not err in determining that Husband did not waive the attorney-client privilege through implied waiver.

{¶23} Mr. McCormack further argues that the self-protection exception to privilege applies. Although "R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be *waived*," common law *exceptions* to the privilege are still recognized. (Emphasis added.) *Squire*, 2010-Ohio-4469, at ¶ 44 (waivers of, and exceptions to, attorney client privilege are distinct matters). "Ohio recognizes the common-law self-protection exception to the attorney-client privilege, which permits an attorney to testify concerning attorney-client communications when necessary to establish a claim for legal fees on behalf of the attorney or to defend against a charge of malpractice or other wrongdoing in litigation between the attorney and the client." *Id.* at paragraph one of the syllabus.

{¶24} Here, the privilege at issue was that between Husband and his Minnesota attorney. The *Minnesota attorney* was not attempting to establish a claim for legal fees or to defend himself from a charge of malpractice in the instant case. *See id.* at ¶ 34-35 (explaining the history of self-protection exception as permitting disclosure of otherwise protected confidences when necessary to protect an attorney's "own" rights). Accordingly, we conclude that *Squire*

does not encompass the situation applicable here, where the defending attorney seeks disclosure of a successor attorney's file. Mr. McCormack has not directed this Court to any case law which applies the common-law self-protection exception to privilege to the disclosure of a file of an attorney who is not himself seeking self-protection. *See* App.R. 16(A)(7). Further, this Court recently decided that the self-protection exception does not entitle a defending attorney to the discovery of communications between his former client and successor attorney. *Cook v. Bradley*, 9th Dist. Lorain No. 15CA010726, 2015-Ohio-5039, ¶ 12-13.

**{¶25}** Accordingly, Mr. McCormack's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING [MR.] MCCORMACK'S MOTION FOR SUMMARY JUDGMENT AND GRANTING [HUSBAND'S] CROSS-MOTION ON STATUTE OF LIMITATION GROUNDS.

**{¶26}** In his second assignment of error, Mr. McCormack argues that the trial court erred in granting Husband's motion for partial summary judgment, and denying Mr. McCormack's motion for summary judgment. We disagree.

**{¶27}** We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

**{¶28}** Pursuant to Civ.R. 56(C), summary judgment is proper only if:

No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* at 293. If the moving party fulfills this burden, then the burden shifts to the nonmoving party to prove that a genuine issue of material fact exists. *Id.*

**{¶29}** Here, the parties filed competing motions for summary judgment, in part, on the issue of whether the statute of limitations barred Husband's action. A legal malpractice action must be "commenced within one year after the cause of action accrued[.]" R.C. 2305.11(A). "The Ohio Supreme Court clarified the determination of the time of accrual of a legal malpractice action in *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54 [(1989)]." *Sandor v. Marks*, 9th Dist. Summit No. 26951, 2014-Ohio-685, ¶ 9. Therein, the Ohio Supreme Court determined:

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie* at syllabus. "In assessing the date of a cognizable event, courts employ an objective reasonable person standard, rather than a subjective standard." (Internal quotations and citations omitted.) *Sandor* at ¶ 9. "Specifically, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that improper legal work has taken place." (Quotation and citations omitted.) *Id.*

**{¶30}** "In determining when the attorney-client relationship is terminated, the court must point to an affirmative act by either the attorney or the client *that signals the end of the relationship*." (Emphasis added.) *Mobberly v. Hendricks*, 98 Ohio App.3d 839, 843 (9th Dist.1994), citing *Mastran v. Marks*, 9th Dist. Summit No. 14270, 1990 WL 34845 (Mar. 28, 1990).

**{¶31}** Here, the parties do not appear to dispute the relevant facts, but appear to dispute the application of the law to the facts. Mr. McCormack maintains that the dismissal of the legal separation action and Wife's dismissal of her counterclaim for divorce on June 17, 2011 were cognizable events and that the dismissal of the Lorain County Domestic Relations Court action also terminated the attorney-client relationship. Accordingly, he argues that this date commenced the running of the statute of limitations. Because there is no dispute of fact that Husband filed his action in Cuyahoga County more than one year after that date: July 3, 2012,[1] Mr. McCormack argues that the statute of limitations barred the action.

**{¶32}** Assuming without deciding that the dismissal of the Lorain County Domestic Relations Court action was a "cognizable event" for purposes of the statute of limitations, we cannot discern in what way such an event signaled the end of the attorney-client relationship. Mr. McCormack did not dispute that he continued to engage in communications with Husband concerning the Minnesota divorce action and the potential refiling of Lorain County Domestic Relations action after its dismissal. The summary judgment evidence established that Mr. McCormack sent emails to Husband indicating that there were options available to refile in

---

[1] Neither party disputes that the date of filing of the present complaint relates back to the date of filing of the complaint in Cuyahoga County. *See* R.C. 2305.19.

Lorain County, and transfer the case back to Ohio. In an email dated July 1, 2011, Mr. McCormack advised Husband that he was "consulting the Bar Association regarding [his] ethical position in continuing representation[.]" In an email dated July 11, 2011, in response to an email that Husband had sent Mr. McCormack, asking if a parenting affidavit that he dropped off at Mr. McCormack's office had been filed in Lorain, Mr. McCormack advised Mr. Stepka that he was "standing back * * * pending the opinion on the ethical question" and instructed Husband to "let [him] know what [Husband] intended[ed] to do in the Minnesota case[, which had a] great bearing on what can be done with regard to any proceedings here." In addition, Mr. McCormack stated in his deposition that, after Wife's dismissal of her counterclaim, he "was not retained for anything else, but we were still trying, meaning as of this date [(seemingly in reference to August 4, 2011)], to get local counsel involved to determine whether anything could be done." Accordingly, it appears from the summary judgment materials that, as Mr. McCormack acknowledged at trial, he "was trying to move forward to correct a mistake that was made" after dismissal of the action. This Court has held that an alleged malpractice action did not accrue for purposes of the statute of limitations when counsel continued to assist the client "to mitigate the damages caused by that alleged malpractice." *Sevin v. Thompson, Hine & Flory*, 9th Dist. Summit Nos. 17349, 17483, 1996 WL 285374, *6 (May 29, 1996); *Ruf v. Belfance*, 9th Dist. Summit No. 26297, 2013-Ohio-160, ¶ 20 ("[T]olling in a legal malpractice context is germane where a cognizable event has occurred and the attorney-client relationship continues so that the attorney has an opportunity to correct the error and perhaps avoid a legal malpractice claim."). Mr. McCormack continued to attempt to resolve the issues caused by dismissal of the Lorain County Domestic Relations action at least past July 3, 2011, as evidenced by his emails Husband

submitted in support of his motion for partial summary judgment. As a result, Husband's July 3, 2012 filing was timely.

{¶33} Accordingly, the trial court did not err in denying Mr. McCormack's motion for summary judgment, and granting Husband's motion for summary judgment, on the issue of the statute of limitations.

{¶34} Next, in his merit brief, Mr. McCormack argues that the trial court erred in failing to grant his motion for summary judgment on the basis that Husband's claim was barred by the doctrine of judicial estoppel. Judicial estoppel prohibits a party from raising an argument that is "inconsistent with one successfully and unequivocally asserted by the same party earlier." (Quotations, citations, and emphasis omitted.) *State v. Dembie*, 9th Dist. Lorain No. 14CA010527, 2015-Ohio-2888, ¶ 15. However, in Mr. McCormack's merit brief, he fails to fully develop this argument by explaining in what way Husband's settlement of the Minnesota case involved a position inconsistent with his position that he would have fared better had his children remained, and his case proceeded, in Ohio. We decline to develop on argument on his behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out.").

{¶35} Therefore, Mr. McCormack's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT'S VERDICT AND DECISION SHOULD BE REVERSED BECAUSE THE DAMAGES ALLEGEDLY SUSTAINED BY [HUSBAND] WERE NOT PROXIMATELY CAUSED BY AN ACT OR OM[I]SSION OF [MR.] MCCORMACK AND ARE ENTIRELY SPECULATIVE.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY FINDING THAT [HUSBAND] WOULD HAVE BEEN AWARDED PERMANENT CUSTODY HAD THE MATTER PROCEEDED IN OHIO.

{¶36} In his third and fourth assignments of error, Mr. McCormack argues that the trial court erred in determining that Mr. Stepka's damages were proximately caused by Mr. McCormack's negligence.

{¶37} "[T]o establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 77 Ohio St.3d 421, 427, 1997-Ohio-259.

{¶38} Here, the trial court identified two instances where Mr. McCormack breached the standard of care owed to Husband: (1) failing to re-file the complaint in Ohio and challenge the jurisdiction in Minnesota, and (2) not securing an ex parte order restraining Wife from removing the parties' children from Ohio in accordance with the local rules. The trial court determined that, as a "proximate result" of these breaches, Husband was damaged by Wife taking the children to Minnesota and by the case not proceeding in Ohio. If the case had proceeded in Ohio, and the ex parte restraining order obtained, the trial court determined that it was probable that Husband would have (1) received permanent custody of his daughters, (2) received two years of spousal support in the total amount of $158,000, (3) received a social security set off against his pension, resulting in a benefit of $80,000, (4) received $40,000 more with respect to the equitable division of marital assets, and (5) incurred only $4,500 in fees to Mr. McCormack,

instead of $27,000 in attorney fees paid to his Minnesota counsel.  Mr. McCormack argues that Husband failed to establish that his actions proximately caused these damages because his own failure to contest jurisdiction caused his damages and because these damages were speculative. We will separately review these issues.

Intervening Cause

{¶39}  "Briefly stated, the proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred."  *Natl. City Mtge. Co. v. Gingo Appraisal Servs.*, Inc., 9th Dist. Summit No. 24123, 2008-Ohio-4074, ¶ 7, quoting *Aiken v. Indus. Comm.*, 143 Ohio St. 113, 117 (1944).

{¶40}  Here, Mr. McCormack does not appear to dispute the premise that, but for Mr. McCormack's dismissal of the legal separation case in Lorain County, the case would not have proceeded in Minnesota.  However, Mr. McCormack essentially maintains that Husband's failure to contest Minnesota's jurisdiction over him caused his damages.

{¶41}  From this argument, it appears that Mr. McCormack maintains that Husband's failure to contest jurisdiction in Minnesota severed the causation between Mr. McCormack's actions and the outcome of the case.

{¶42}  An intervening action occurring between the negligent act and injury may sever causation:

> The causal connection of the first act of negligence is broken and superseded by the second, only if the intervening negligent act is both new and independent. The term "independent" means the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence.  The term "new" means that the second act of negligence could not reasonably have been foreseen.  Thus, the key determination [of] [w]hether an intervening act breaks the causal connection between negligence and injury depends upon whether that

intervening cause was reasonably foreseeable by the one who was guilty of the negligence.

(Internal quotations, citations, and emphasis omitted.) *Leibreich v. A.J. Refrig., Inc.*, 67 Ohio St.3d 266, 269-70, 1993-Ohio-12; *see also Natl. City Mtge. Co.*, 2008-Ohio-4074, at ¶ 7.

{¶43} Here, we cannot say that the trial court erred in determining that the divorce proceeding in Minnesota to its conclusion was the proximate result, i.e. "the natural and continuous sequence, unbroken by any *new, independent* cause * * * which * * * would not have occurred" but for Mr. McCormack's dismissal of Husband's Ohio case. (Emphasis added.) *Natl. City Mtge. Co.* at ¶ 7. Mr. McCormack makes no argument that the divorce proceeding in Minnesota until its resolution was not a reasonably foreseeable result of dismissing the Lorain County domestic action, and failing to refile the action and contest jurisdiction. *See Leibreich* at 270 ("key determination [of] [w]hether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence") (Internal quotations and citation omitted.). Accordingly, to the extent that Mr. McCormack argues that his actions were not the proximate cause of the purported economic damages because Husband failed to contest jurisdiction in Minnesota, Mr. McCormack's third assignment of error is overruled.

Speculative Damages

{¶44} Further, Mr. McCormack argues that the existence of Husband's damages was speculative because the trial court improperly relied on Husband's expert's predictions as to how the assigned domestic relations judge in Lorain County would have ruled in the divorce case, and predictions render the existence of damages speculative.[2]

---

[2] Mr. McCormack also repeatedly references that Husband's expert did not testify as to Minnesota law, and he also maintains that the trial court ignored testimony from his expert as to

{¶45} "Damages must be shown with certainty, and not left to conjecture and speculation." *Franjesh v. Berg*, 9th Dist. Summit No. 17534, 1996 WL 556899, *5 (Oct. 2, 1996), citing *Pietz v. Toledo Trust Co.*, 63 Ohio App.3d 17, 22 (6th Dist.1989). "[I]t is the uncertainty of the *existence* of damages, not uncertainty as to the amount, which precludes recovery." (Emphasis sic.) *Franjesh* at *5, citing *Bemmes v. Public Emp. Retirement Bd.*, 102 Ohio App.3d 782, 789 (12th Dist.1995).

{¶46} In making his argument that the existence of Husband's damages was speculative, Mr. McCormack relies heavily on this Court's decision in *Franjesh*. In that case, Ms. Franjesh had retained an attorney to assist her in the termination of her marriage. *Id.* at *1. The attorney hired a certified pension evaluation expert to value Mr. Franjesh's pension. *Id.* After Ms. Franjesh learned what the expert believed to be her share of the value, she signed a separation agreement and filed for dissolution of her marriage. *Id.* As part of the division of the parties' property, Mr. Franjesh retained all of his rights to his pension. "Some time after the dissolution, [Ms. Franjesh] compared the valuation of her ex-husband's pension to that of a recently divorced friend with supposedly similar public service pension entitlement and found there was a 'vast discrepancy.'" *Id.*

{¶47} Thereafter, Ms. Franjesh filed a complaint against her attorney for legal malpractice, claiming that her attorney's failure to properly value her interest in the pension "resulted in an inequitable division of property." *Id.* The attorney moved for summary judgment, which the trial court granted, partially on the basis that her damages were too speculative as a matter of law. *Id.* at *2. Ms. Franjesh appealed to this Court. We concluded

Minnesota law. However, Mr. McCormack does not clearly indicate to this Court the import of expert testimony as to Minnesota law in the analysis. We decline to develop an argument on his behalf. *See* App.R. 16(A)(7).

that Ms. Franjesh had not provided any evidence that she would have, or was entitled to receive, an increased share of her ex-husband's pension, and her expert's affidavit opining that she should have received a higher share was not supported by the law. *Id.* at *4-7.

{¶48} Unlike *Franjesh*, here, Husband's expert provided testimony as to the amount he would have likely received under Ohio law if his case had proceeded in Lorain County based upon his experience in that court, and he cited Ohio laws which supported many of these conclusions. Accordingly, to the extent that Mr. McCormack challenges the judgment as a whole as being comprised of speculative damages, his third assignment of error is overruled.

{¶49} Mr. McCormack next argues, specifically as to spousal support, that the damages apportioned to the loss of spousal support were speculative. In its findings of fact and conclusions of law, the trial court indicated that, based upon the testimony adduced at the hearing, the domestic relations court judge in Lorain County "operated by a 'rule of thumb'" process, "[d]espite statutory law and case law[.]" The testimony regarding this "rule of thumb" process pertained to the award of spousal support. Husband's expert testified that he was familiar with and had practiced before the trial court judge to whom his case had been assigned in Ohio, Judge Basinski. The following exchange then occurred:

> [Husband's counsel]: And how does Judge Basinski handle [spousal support]?
>
> [Husband's expert]: Theoretically, all the judges handle it under [R.C.] 3105.18, which sets forth about 13 statutory factors: duration of the marriage; age of the parties; disparity of income; the other statutory factors.
>
> As a practical matter, most of them use what I call a rule of thumb. It's not a rule of formula. It's a rule of thumb. A[n]d that is, for every five years of marriage, they would allow for one year of spousal support. And the other thing that they do, Judge Basinski does specifically, is he equalizes the income.
>
> Some of the other judges here use a program called FIN plan. That takes in consideration some of the tax effects of, you know, social security and other taxes that the payor, the recipient of spousal support would not have. So they make an adjustment for the taxes.

Judge Basinski takes the gross numbers. You know, if somebody is making two hundred and somebody is making a hundred and then that's three, and each side would end up with 150. So whoever is going to pay is going to pay 50,000, and the other side is going to receive 50,000. That would multiple (sic.) by the number of years of marriage divided by five. And in this case, Mr. Stepka, in my opinion, would have received two years of spousal support of approximately $80,000 – I think actually 79 – but 156 to 160 thousand dollars that he would have received that he did not receive in Minnesota.

{¶50} During cross-examination, Husband's expert acknowledged that the five to one ratio and equalization of income were not required under Ohio law; however, he maintained:

* * *. My opinion is based upon appearing before Judge Basinski on numerous occasions and knowing that he follows that rule of thumb almost without variance, despite any arguments; and that when you're in front of Judge Basinski, you pretty much know it's one year of support for every five years of marriage, and its equalization of income based upon gross dollars. That's why they call the B rule, Judge Basinski's rule.

{¶51} With respect to spousal support, this Court has held that "[a] trial court has wide latitude when awarding spousal support, and, thus, such an award will not be reversed absent an abuse of discretion." *Walters v. Walters*, 9th Dist. Medina No. 12CA0017-M, 2013-Ohio-636, ¶ 12, citing *Sigman v. Sigman*, 9th Dist. Wayne No. 11CA0012, 2012-Ohio-5433, ¶ 11. "However, a trial court's broad discretion in regard to spousal support must be guided by the factors set forth in R.C. 3105.18(C)(1)." *Walters* at ¶ 12, quoting *Sigman* at ¶ 11. Because a court must consider the factors in R.C. 3105.18(C)(1), spousal support cannot properly be determined through strict adherence to a mathematical formula. *See Organ v. Organ*, 9th Dist. Summit No. 26904, 2014-Ohio-3474, ¶ 15. Nonetheless, equalization of the parties' income for a certain time, arrived at through such a formula, may be appropriate if it is also appropriate in consideration of the statutory factors. *See Organ* at ¶ 16 ("Upon review of the record, we conclude that, even though the court used the FIN Plan analysis as a tool to calculate an even

division of Husband's earnings, its underlying spousal support decision was based on the factors outlined in Section 3105.18(C), not a mathematical formula.").

{¶52} Here, Husband's expert's opinion as to the likely spousal support award was based upon on a particular judge using only a mathematical formula to calculate what Husband would have received for spousal support had the case remained in Lorain County. The trial court appears to have adopted that calculation and reasoning in its journal entry. However, there is no indication that the court considered whether it was more probable than not that spousal support in this amount was consistent with the statutory factors. *See id.* at ¶ 15. We make no determination as to whether such an amount would likely have been reasonable in this case; however, we cannot agree that calculation of damages can be based upon evidence that the domestic court would have *disregarded* the law in favor of strict adherence to a "rule of thumb[.]"

{¶53} Accordingly, to the extent Mr. McCormack argues that the trial court erred in calculating damages by basing its calculations on a particular judge's tendencies irrespective of whether those tendencies comported with Ohio law, his third assignment of error is sustained. We make no determination as to whether the evidence supported a conclusion that spousal support would likely have been awarded in accordance with Ohio law, and, on remand, the trial court is instructed to consider this issue.

{¶54} In Mr. McCormack's fourth assignment of error, he argues that damages based upon the loss of custody of his children were speculative. The trial court concluded that Husband's loss of parenting time arose from Mr. McCormack's failure to obtain an ex parte restraining order preventing Wife from removing the children from Ohio prior to Wife relocating the children in Minnesota. There is no dispute that the Loc.R. 11 provides that a party may seek

an ex parte order following certain guidelines in emergency situations. Here, the testimony of the guardian ad litem and Husband's expert indicates that, had Mr. McCormack followed these guidelines and sought such an order to prevent Wife from taking the children to Minnesota, it would likely have been granted. Based upon this testimony, we conclude that the trial court did not err in determining that the trial court would have granted an ex parte order restraining Wife from removing the children.

{¶55} Next, R.C. 3109.04 requires a trial court to determine custody based upon the best interests of the children. Here, the Lorain County Court appointed a guardian ad litem to assist it in its best interest determination. One of the critical factors in his determination revolved around the children having been located in Minnesota for many months prior to his interview. The guardian noted that he was unsure what his position would have been had the children remained in Ohio. Husband's expert indicated that the guardian ad litem would likely have recommended that the best interests of the children would be served by remaining in a geographic location to which they had been adjusted. Accordingly, because both parents were otherwise suitable, the expert indicated that, had the children remained in Ohio, there "probably would have [been] a different outcome with respect to custody." Therefore, given the testimony adduced at trial, we cannot say that the trial court's conclusion that Husband likely would have received greater parenting time in Ohio was merely speculative.

{¶56} Accordingly, Mr. McCormack's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED BY DENYING [MR.] MCCORMACK'S MOTION FOR DIRECTED VERDICT SEEKING TO DISMISS [HUSBAND'S] "CLAIM" FOR MENTAL ANGUISH.

**ASSIGNMENT OF ERROR VI**

THE TRIAL COURT ERRED IN AWARDING A MONETARY VALUE FOR MENTAL ANGUISH.

**{¶57}** In his fifth assignment of error, Mr. McCormack argues that the trial court erred in denying his motion for a directed verdict on Husband's claim for mental anguish. In his sixth assignment of error, Mr. McCormack argues that the trial court erred to the extent that it awarded damages for mental anguish as part of the legal malpractice claim.

**{¶58}** At the conclusion of Husband's case-in-chief, Mr. McCormack moved for a directed verdict on Husband's claim for compensatory damages for emotional distress. "Although [Mr. McCormack] moved for a directed verdict in the court below, this Court has held that '[a] motion for directed verdict, made at the close of a plaintiff's case in a bench trial, will be deemed to be a motion for involuntary dismissal under Civ.R. 41(B)(2)[.]'" *Kowalski v. Smith*, 9th Dist. Wayne No. 09CA0059, 2010-Ohio-3662, ¶ 9, quoting *Alh Properties, P.L.L. v. Procare Automotive Serv. Solutions, L.L.C.*, 9th Dist. Summit No. 20991, 2002-Ohio-4246, ¶ 8. *See also Nelson Jewellery Arts Co., Ltd. v. Fein Designs Co., Ltd., L.L.C.*, 9th Dist. Summit No. 22738, 2006-Ohio-2276, ¶ 5. "Thus, this Court will construe [Mr. McCormack's] motion as one for dismissal under Civ.R. 41(B)(2)." *See Kowalski* at ¶ 9. "In ruling on an involuntary dismissal under Civ.R. 41(B)(2), 'the court weighs the evidence, resolves any conflicts, and may render judgment in favor of the defendant if the plaintiff has shown no right to relief.'" *Lopez v. Thomas*, 9th Dist. Summit No. 27115, 2014-Ohio-2513, ¶ 17, quoting *Alh Properties, P.L.L.* at ¶ 9. "The trial court's conclusions will not be set aside unless they are erroneous as a matter of law or against the manifest weight of the evidence." *Alh* at ¶ 10.

{¶59} Here, in making his motion below, Mr. McCormack's counsel argued to the court that "no damages for mental anguish may be recovered against an attorney absent sufficient evidence of wrongful intentional or willful conduct."

{¶60} In response, Husband maintained, in part, that, due to Mr. McCormack's negligence, what he lost was "not only a financial claim, but a claim that [Husband] lost the ability to be with his children. However you couch it, it is the inability to be with his children that is a substantial component of this claim, and that is a loss that was directly attributable to Mr. McCormack's both substandard legal services as well as our claim of willful misconduct."

{¶61} In addressing Mr. McCormack's motion, the trial court ruled as follows:

[I]t is the Court's opinion that with respect to a legal malpractice case, when there is a claim for the negligent infliction of emotional distress, proof is required in the form of wrongful, intentional, willful conduct and that the damages be severe and debilitating. And so to the extent that incorporates [Mr. McCormack's] motion for a directed verdict, it's granted.

However, the Court believes that a general claim for mental anguish as a part of noneconomic damages proceeds and stays alive in this case, and so the Court will consider that to the extent that it is supported by the evidence.

{¶62} In the trial court's order, on the issue of loss of parenting time of his daughters, the trial court determined:

As a proximate result of [Mr. McCormack's] negligence, [Husband] suffered a severe limitation of the time that he can spend with his daughters now and into the future, resulting in a permanent interruption of his relationship with his children and causing him to suffer the anguish that logically flows to any parent who was a primary caregiver and who had forged a close and loving bond with his children. The value of that loss is One Hundred and Fifty Thousand Dollars $150,000.00.

{¶63} In his brief, Mr. McCormack argues that the trial court should have dismissed the claim for "mental anguish" because Mr. Stepka failed to plead such a claim in his complaint and never amended his complaint to include such a claim. However, that was not the basis of his objection below. *See Brunke v. Ohio State Home Servs., Inc.*, 9th Dist. Lorain No. 13CA010500,

2015-Ohio-2087, ¶ 47 ("It is axiomatic that a litigant who fails to raise an argument in the trial court forfeits his right to raise that issue on appeal.") (Citations omitted.). In his objection below, Mr. McCormack argued that damages for emotional distress had not been proven because there was no evidence of willful and wanton conduct on his part, and there was no evidence that Husband suffered severe and debilitating emotional distress. Nonetheless, our reading of the transcript indicates that the trial court *granted* Mr. McCormack's motion to the extent that Husband sought *a separate claim for negligent infliction of emotional distress* with respect to emotional distress caused by his attorney's conduct. Further, although the trial court references Husband's "anguish" in awarding him the $150,000, the trial court's decision references this amount as the value of the "loss" attributable to the loss of companionship. Mr. McCormack has not raised an argument, either below or on appeal, that the trial court was incorrect in concluding that such damages could be recovered as representing a portion of the non-economic value of the loss of companionship. *See id.* at ¶ 47, and App.R. 16(A)(7). Consequently, we do not take a position on that issue as it is not squarely before us.

{¶64} Accordingly, Mr. McCormack's fifth and sixth assignments of error are overruled.

### III.

{¶65} Mr. McCormack's first, second, fourth, fifth, and sixth assignments of error are overruled. Mr. McCormack's third assignment of error is sustained in part and overruled in part. The judgment of the trial court is affirmed in part, reversed in part, and this cause is remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
CONCURRING.

{¶66} I concur with the majority's resolution of the first assignment of error based solely on this Court's precedent in *Cook v. Bradley*, 9th Dist. Lorain No. 15CA010726, 2015-Ohio-5039. I concur in the remainder of the majority's opinion.

APPEARANCES:

MONICA A. SANSALONE, COLLEEN A. MOUNTCASTLE, and JAMIE A. PRICE, Attorneys at Law, for Appellant.

WILLIAM HAWAL and WILLIAM B. EADIE, Attorneys at Law, for Appellee.

MARGARET E. STANARD, Attorney at Law, for Appellee.